UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVANAND PERSAUD,

      Petitioner,

v.

MICHAEL BALL, in his official capacity
as Acting Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration &
Customs Enforcement, et al.,[1]

      Respondents.

---

**DECISION AND ORDER**

1:26-CV-00841-EAW

Petitioner Davanand Persaud ("Petitioner") is a civil immigration detainee alleging that he is being detained in United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") custody pending removal proceedings in violation of the United States Constitution.  (Dkt. 1).  He seeks relief under 28 U.S.C. § 2241.  (*Id.*).  Petitioner is being held at the Buffalo Federal Detention Facility in Batavia, New York. (*Id.* at ¶ 7).

---

[1]     Michael Ball is the Acting Deputy Field Office Director of the Buffalo Field Office of the United States Immigration and Customs Enforcement and thus is substituted as Respondent in place of James Bausch pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to update the docket to reflect this substitution.

For the reasons set forth herein, Respondents' motion to dismiss is denied and Respondents are directed to provide Petitioner with a bond hearing in accordance with the directions set forth below.

## BACKGROUND

Petitioner is a citizen of Guyana who entered the United States on or about July 20, 2023, pursuant to a B2 visa. (*Id.* at ¶ 1; Dkt. 3-2 at ¶ 5). He applied for asylum, withholding of removal, and protection pursuant to the Convention Against Torture on or about November 22, 2024. (Dkt. 1 at ¶ 2; Dkt. 3-2 at ¶ 7). Petitioner was detained on March 17, 2026, in a targeted ICE operation. (Dkt. 1 at ¶ 1; Dkt. 3-2 at ¶ 9). Petitioner alleges that no warrant was issued prior to his arrest, but Respondents contend that upon detaining Petitioner, he was served with an executed I-200 Warrant for Arrest of Alien and Notice to Appear, charging him with removability. (Dkt. 1 at ¶ 4; Dkt. 3-2 at ¶ 12). After his detention, an immigration judge issued an order of removal (Dkt. 8-1), although Petitioner is apparently pursuing an appeal of that order and thus it is not yet final.

Petitioner filed his petition on April 26, 2026. (Dkt. 1). On April 27, 2026, this Court entered a Text Order directing Respondents to show cause on or before May 4, 2026, why the petition in this case should not be granted to the extent it seeks an order requiring that Petitioner receive a bond hearing in light of this Court's Decisions and Orders in *Quituizaca Quituisaca v. Bondi, et al.*, No. 25-cv-6527, 2025 WL 3264440 (W.D.N.Y. Nov. 24, 2025) and *Lieogo v. Freden, et al.*, No. 6:25-CV-06615 EAW, 2025 WL 3290694 (W.D.N.Y. Nov. 26, 2025), which found that noncitizens who are present in the United States without having been admitted or paroled are not subject to mandatory detention

under 8 U.S.C. § 1225(b)(2) but instead are subject to detention under section 1226, and its Decisions and Orders in *Ivonin v. Rhoney, et al.*, No. 6:25-CV-06673 EAW, 2026 WL 199283 (W.D.N.Y. Jan. 26, 2026) and *Ab-Rahim v. Marich*, No. 6:26-CV-06005-EAW, 2026 WL 279113 (W.D.N.Y. Feb. 3, 2026), which held that the detention of noncitizens following expiration of parole is also governed by 8 U.S.C. § 1226, and not § 1225.  (Dkt. 2).  Since that time, the Second Circuit Court of Appeals issued a decision in *da Cunha v. Freden*, 175 F. 4th 61 (2d Cir.  2026), holding that noncitizens who are present in the United States after entering without inspection and admission and who were not apprehended at or near the border at the time of entry are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but instead are subject to detention under § 1226(a).

In response to the order to show cause, Respondents filed a motion to dismiss.  (Dkt. 3).  Respondents acknowledge that the rulings in the identified cases concern the same or similar challenges to the government policy or practice at issue in the instant petition and would direct the same outcome in this matter entitling Petitioner to a bond hearing, but argue that the petition should be dismissed for Petitioner's failure to exhaust administrative remedies by not pursuing a bond hearing.  (Dkt. 3-1 at 2).  On May 5, 2026, the Court set a briefing schedule setting a deadline for Petitioner to respond to the motion to dismiss on or before May 15, 2026.  (Dkt. 4).  After Petitioner failed to respond to the motion to dismiss, the Court entered a Text Order informing the parties that it intended to grant the motion to dismiss and direct the Clerk's office to close the case unless on or before June 9, 2026, either party objected.  (Dkt. 5).  On June 5, 2026, Petitioner filed a response opposing the motion to dismiss.  (Dkt. 6.)

The Court set the matter down for oral argument on June 22, 2026. (Dkt. 7). At the hearing, Petitioner's counsel reported that Petitioner had been provided with a bond hearing on June 10, 2026. Respondents acknowledged that this fact impacted the arguments presented and the Court directed them to provide a status update by June 24, 2026, as to their current position on the petition, which they have now done. (Dkt. 10).

## DISCUSSION

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

In the immigration context, "recent Second Circuit precedent firmly establishes that [a district] [c]ourt can hear and decide Section 2241 habeas petitions brought by individuals in immigration detention, so long as the petitions challenge the constitutionality of the petitioners' detention rather than the underlying removal proceedings." *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 404 (E.D.N.Y. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 399-400 (2d Cir. 2025) (finding petitioner's First and Fifth Amendment challenges to her detention distinct from challenges to her removal proceedings and therefore properly within the district court's jurisdiction); *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (same)). Here, Petitioner seeks an order requiring his immediate release or in the

alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a), at which the government bears the burden of proof. (Dkt. 1 at ¶ 6).

In their motion to dismiss, Respondents initially argued that Petitioner's petition should be dismissed for failure to exhaust administrative remedies and that he should be required to seek a bond hearing before seeking Court intervention. Now presented with the fact that Petitioner has since sought and been provided a bond hearing at which he bore the burden of proof, Respondents nevertheless continue to maintain that Petitioner has not exhausted his administrative remedies and should be required complete an appeal to the Board of Immigration Appeals ("BIA") before proceeding in this Court. The Court has previously rejected this argument, *see, e.g., Alfaro v. Barr*, 426 F. Supp. 3d 6, 13 (W.D.N.Y. 2019), and continues to do so here. In other words, requiring Petitioner to pursue an appeal before the BIA would be futile because according to its precedent, it would not require the burden of proof to be placed on Respondents, and thus any remedy under these circumstances would be constitutionally inadequate.

The Court further concludes that due process entitles Petitioner to another bond hearing with the burden on the government. *See, e.g., Lieogo,* 2025 WL 3290694, at \*4-5. "In the Second Circuit, the balancing test laid out by the Supreme Court in *Mathews v. Eldridge* . . . applies when determining the 'adequacy of process in the context of civil immigration confinement.'" *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at \*13 (E.D.N.Y. Oct. 6, 2025) (citation omitted). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value,

if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

This Court has previously expressed the view that due process requires the government to bear the burden of proving by clear and convincing evidence that detention is justified at a bond hearing under § 1226(a). *Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *4 (W.D.N.Y. Nov. 26, 2025); *Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019). The Court recognizes that in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit held that the petitioner's prolonged incarceration "for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," *id.* at 855, and that the case did not require the court "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," *id.* at 855 n.13. But even though Petitioner has been detained four months versus the 15 months at issue in *Velasco Lopez*, under the circumstances here, the Court concludes that Respondents' ongoing detention of Petitioner must be justified at a bond hearing with the burden of proof to show flight or danger placed on Respondents.

Consideration of the first *Mathews* factor strongly favors Petitioner receiving a bond hearing where Respondents bear the burden of proof because Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). The BFDF "while perhaps not akin to a maximum-security prison," is

not "meaningfully different from at least a low-security penal institution for criminal detention." *Wilson v. Barr*, No. 1:19-CV-01364 EAW, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020). And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from a criminal adjudication. *See Alvarez Ortiz*, 808 F. Supp. 3d at 599 ("[I]t is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is 'not the result of a criminal adjudication.' This, too, heightens [the petitioner's] interest in his liberty." (citation modified)).

As for the second factor, while not weighing as strongly in favor of Petitioner as the first factor under the circumstances here, the Court also finds that the risk of erroneous deprivation is high, notwithstanding the change in circumstances arising from Petitioner's recent arrest for the offense of driving while intoxicated and the existence of potential criminal charges pending against Petitioner in Guyana. *See Castellano v. Blanche*, No. 2:26-CV-00124-GMN-BNW, 2026 WL 1414049, at *5 (D. Nev. May 20, 2026) ("While Petitioner was arrested for forgery and theft charges prior to being detained by ICE, that does not obviate his due process rights. Even if it is possible that the arrest may provide the government with a justification to revoke Petitioner's parole, the government must still inform Petitioner of that justification and provide Petitioner an opportunity to rebut it. Because the government did not do so here, the Court finds that the second *Mathews* factor weighs in favor of Petitioner."); *Caglar v. Wamsley*, No. 2:26-CV-00787-TMC, 2026 WL 1123515, at *5 (W.D. Wash. Apr. 24, 2026) ("Even if the government can show that Caglar's traffic stop constitutes a material change in circumstances, he must still be

provided with an 'opportunity to address the bases asserted for his re-detention.'" (quoting *Sandhu v. Noem*, No. 2:26-CV-00465-TLF, 2026 WL 607701, at \*3 (W.D. Wash. Mar. 4, 2026))). This conclusion is buttressed by the fact that Respondents seemingly continue to endorse a policy of detention without due process, *see Nany v. Blanche*, No. 1:26-CV-01187-EAW, 2026 WL 1842635 (W.D.N.Y. June 26, 2026) (discussing practice of detaining noncitizens and transferring them to jurisdiction adopting government's interpretation of § 1225(b)(2), notwithstanding *da Cunha*), and comes amid allegations that immigration judges in this country are reportedly discouraged from granting bond or incentivized to deny it. And it is further supported by the cursory denial of bond as reflected by the order issued by the immigration judge, when Petitioner was required to bear the burden of proof to support his release. (*See* Dkt. 10-1 (summarily denying bond)).

Finally, while the Court acknowledges that the government's discretion to detain individuals under § 1226(a) is valid where it advances a legitimate governmental purpose, that third *Mathews* factor does not overcome the weight in favor of Petitioner under the first and second factors. In other words, requiring Respondents to bear the burden of proof in support of detention at a bond hearing will not undermine that legitimate government purpose. If the risks of flight or danger sufficiently justify Petitioner's detention pending a resolution of his immigration matter, Respondents presumably will be able to justify that result at a bond hearing.

**CONCLUSION**

Accordingly, for the reasons set forth herein, the petition is granted to the extent that Petitioner seeks a bond hearing, the motion to dismiss is denied, and a bond hearing shall be conducted in accordance with the following terms:

1.      Petitioner shall be granted a bond hearing before an immigration judge ("IJ") on or before July 24, 2026.  If Petitioner requests a continuance that results in a bond hearing date outside this deadline, such a continuance will comply with this Order as long as the new date falls within a reasonable time period.

2.      After considering the balancing test set forth in *Mathews,* the Court concludes that the government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  In deciding whether the government has met its burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.

3.      If the IJ finds that the government has not met its burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

4.      Thus, in order to continue Petitioner's detention after any bond hearing, the IJ must find by clear and convincing evidence and make findings that no condition or combination of conditions of release can reasonably ensure Petitioner's appearance and the safety of the community—that is, even with conditions, Petitioner presents an identified and articulable risk of flight or a threat to another person or the community.

5.      Respondents are directed to file a status update with the Court on or before July 28, 2026.

- 9 -

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        July 17, 2026
              Rochester, New York